IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SIMOSABO DUBE,<br>　　　　Plaintiff, | § <br> § <br> § | |
| v. | § <br> § | No. 3:25-CV-1474-G-BW |
| UT SOUTHWESTERN MEDICAL<br>CENTER,<br>　　　　Defendant. | § <br> § <br> § <br> § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On July 30, 2025, Defendant The University of Texas Southwestern Medical

Center ("UT Southwestern") filed a Rule 12(b)(6) Motion to Dismiss (Dkt. No. 8

("Motion")).  On September 2, 2025, Plaintiff Simosabo Dube ("Dube") filed a

Response (Dkt. No. 11 ("Resp.")).  On September 16, 2025, UT Southwestern filed a

Reply (Dkt. No. 13 ("Reply")).  This case was referred to the undersigned United

States Magistrate Judge to issue findings and recommendations to the United States

District Judge pursuant to Special Order No. 3-251.  (*See* Dkt. No. 1.)

Based on the relevant filings and applicable law, the undersigned recommends

that UT Southwestern's motion to dismiss be **GRANTED**.

## I.  BACKGROUND

Dube, a Zimbabwean woman, began employment at UT Southwestern as a

clinical research coordinator in September 2023.  (Dkt. No. 3 ("Compl.") at ¶ 6;

Motion at 8.)  In this role, Dube's responsibilities included calling and recruiting

participants for research studies.  (Motion at 8.)  Dube alleges that on or around

- 1 -

March 28, 2024, her project manager Meghan Leak suggested that Dube's accent was interfering with her ability to recruit patients, (Compl. at ECF 10), asserting that patients were unwilling to participate in clinical studies because "people in Texas do not want to talk to Africans on the phone," (*id.* at ¶ 7).  According to Dube, this came after Leak had told another employee, a Kenyan program manager named Geoffrey Obel, that UT Southwestern "did not need to hire any more Africans" because their accents were "not good for the department."  (*Id.* at ECF 10.)

On or around April 1, 2024, Dube shared Leak's comments with her program manager, Malik Obideen, who dismissed her concerns and instead warned that, if Dube's recruitment numbers did not improve, she could face reduced pay or termination.  (*Id.* at ECF 10.)  Later that same day, Leak assigned Dube additional studies to coordinate, "significantly" increasing her workload.  (*Id.* at ECF 10.)  On or about April 2, 2024, Dube reported her encounter with Leak to UT Southwestern's department of Human Resources ("HR"), where her concerns were once again "dismissed without proper investigation or corrective action."  (Compl. at ECF 11, ¶ 8).

Two weeks later, Leak placed Dube on a Performance Action Plan ("PAP") that Dube felt was "baseless" and lacking a "clear justification" due to her "previously satisfactory performance."  (*Id.* at ECF 11, ¶ 9.)  When Dube was later denied a request for time off, the PAP was cited as explanation for why her request was not granted.  (*Id.* at ¶ 9.)  In Dube's telling, the discrimination and retaliation she faced in the aftermath of reporting her concerns over Leak's comments became so

"severe," and impacted her "mental health and well-being" to such a degree, that she ultimately felt she had "no choice but to resign from [her] position in May 2024." (*Id.* at ¶¶ 10–11, ECF 11.)

On August 9, 2024, Dube cross-filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") alleging that UT Southwestern discriminated against her on the basis of her national origin and retaliated against her when she attempted to report the discrimination internally to the appropriate parties. (*See id.* at ECF 10–11.) On March 14, 2025, Dube received her Notice of Right to Sue from the EEOC. (Compl. at ECF 5–6.) On June 10, 2025, Dube sued UT Southwestern in federal court, alleging employment discrimination on the basis of her national origin, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII") and the Texas Commission on Human Rights Act, Tex. Lab. Code §§ 21.051–21.061 ("TCHRA"). (Compl. at ¶ 1.)

## II. LEGAL STANDARDS

A party may move to dismiss a claim if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a

Rule 12(b)(6) motion to dismiss, a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to" the nonmoving party. *Sterling v. City of Jackson*, 159 F.4th 361, 372 (5th Cir. 2025). But this does not mean that courts are "bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), nor does it require courts to presume true mere "conclusory statements" or "threadbare recitals of the elements of a cause of action," *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington*, 16 F.4th 1159, 1162–63 (5th Cir. 2021)). Rather, it simply means that courts should take the well-pleaded factual allegations in a complaint and, assuming their veracity, "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

A pro se plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). It is well established that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (cleaned up). "Even so, mere conclusory allegations on a critical issue are insufficient." *Brown v. Tarrant County*, 985 F.3d 489, 494 (5th Cir. 2021) (cleaned up). And "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

### III. ANALYSIS

After raising in her initial complaint (and included attachments) the factual allegations discussed above, Dube made additional factual allegations in her

response.  These new allegations include that she was instructed by a Dr. Hajjar to "stop emailing about the mistreatment," that multiple black coworkers had left UT Southwestern after experiencing similar mistreatment, and that Leak had explicitly stated that "Africans are perceived as scammers." (Resp. at ¶¶ 1–2.)  The undersigned cannot consider these new allegations when determining whether the motion to dismiss should be granted or denied.

Courts cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *See Spivey v. Robinson*, 197 F.3d 772, 774 (5th Cir. 1999).  In the Rule 12(b)(6) context, pleadings include the complaint, attachments to the complaint, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), the motion to dismiss, and any documents attached to the motion that "are referred to in the plaintiff's complaint and are central to her claim," *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  A response to a motion is not a pleading, Fed. R. Civ. P. 7(a), and a plaintiff may not use such a response to amend existing allegations or introduce new ones, *id.* 8(a).  Because they were not introduced in the pleadings, it would be improper for the undersigned to recognize these newly asserted allegations when making a recommendation on the resolution of the present motion.

## A.    Dube's TCHRA Claims Are Not Time-Barred

Before an individual may pursue a Title VII claim in federal court, she must timely exhaust administrative remedies.  *Taylor v. Books A Million, Inc.*, 296 F.3d 376,

378–79 (5th Cir. 2002).  Plaintiffs must also exhaust administrative remedies prior to filing a civil action under the TCHRA.  *Bunker v. Dow Chem. Co.*, 111 F.4th 683, 686 (5th Cir. 2024).  The processes to exhaust remedies under federal and Texas law are similar, but not identical, each system requiring the complainant to first file a complaint with the appropriate agency—the EEOC under Title VII and the TWC under the TCHRA.  *See Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000).  UT Southwestern does not challenge the timeliness of Dube's claims under Title VII, but it insists that Dube's TCHRA claims are time-barred because she failed to both file this suit and effectuate service on UT Southwestern within 60 days of receiving a notice of her right to sue.  (Motion at 11–12.)  This argument fails, because it conflates the two regulatory regimes into one restrictive hybrid.

Exhaustion under the TCHRA occurs when a plaintiff (1) "file[s] a complaint with the TWC within 180 days of the alleged discriminatory act;" (2) gives the TWC "180 days to dismiss or resolve the complaint;" and (3) files her lawsuit "within 60 days of receiving a right-to-sue letter from the TWC and no later than two years after the complaint was filed."  *Bunker*, 111 F.4th at 686 (quoting *Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 701 (Tex. App.—Austin 2012, no pet.)).  Dube satisfied the first requirement when she filed her complaint with the TWC on August 9, 2024, for an alleged discriminatory act occurring on or around March 28 of the same year.  (*See* Compl. at ECF 10–11.)

By the time Dube brought this suit on June 10, 2025, (*see id.* at ECF 3), the TWC had been allowed significantly more than the 180 days required under state

law to dismiss or resolve her complaint.  And there is no dispute that this lawsuit was filed within two years of Dube's complaint with the TWC.  Yet UT Southwestern maintains that Dube failed to timely file suit, pointing to the Notice of Right to Sue letter she received from the EEOC on March 14, 2025.  (Motion at 11.)  UT Southwestern's contention is that Dube's receipt of this letter triggered a sixty-day window to file suit under the TCHRA that expired on May 13, 2025.  (*Id.*)  By waiting until June to file this suit, Dube failed to timely exhaust her remedies under the TCHRA.  But this is incorrect, because an EEOC "right to sue" letter does not constitute a TWC "right to file a civil action" letter "capable of triggering the TCHRA's sixty-day filing period."  *Vielma*, 218 F.3d at 464.

The EEOC and the TWC pursue similar missions through complicated, "sometimes overlapping" actions, but the "limitations periods" they impose for asserting discrimination claims are "independent," their "remedial schemes" distinct. *Id.*  It follows that the agencies' respective "right to sue" letters are not "interchangeable."  *Id.*  The Fifth Circuit has held that the TCHRA's sixty-day limitations period starts only after the receipt of a "right to file a civil action" letter issued by the TWC, *id.* at 464–66, and there is no indication in the record that Dube received such a letter.  Because the TCHRA's 60-day limitations period was never triggered, and because there is no requirement that a complainant must "wait for this [TWC] letter before filing suit," *id.* at 463, Dube timely exhausted her remedies and filed this suit in full compliance with the administrative requirements of the TCHRA.

## B.   Dube Has Failed to State a Claim

A party who fails to pursue a claim beyond its initial pleading may waive or abandon that claim. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). Thus, a plaintiff's failure to defend a claim in her response to a motion to dismiss constitutes abandonment of that claim. *See Matter of Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017). Here, Dube failed to substantively respond to UT Southwestern's arguments in its motion to dismiss challenging Dube's claims of national origin discrimination, retaliation, and constructive discharge. (*See* Resp.) Because Dube failed to even address UT Southwestern's challenges, let alone defend her own claims against them, Dube has abandoned her Title VII and TCHRA claims. Nevertheless, given that Dube is pro se, the undersigned addresses her claims and finds that none can survive the present motion to dismiss.

Title VII makes it unlawful for an employer to discharge or discriminate against an employee on the basis of her race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). The TCHRA provides parallel protections under state law, making it unlawful for an employer to discharge an employee because of her "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051. Title VII and the TCHRA also provide substantively identical protections from retaliation. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). Courts assess allegations of employment discrimination under these statutes by applying a common framework analysis. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (explaining that claims brought under the TCHRA are

typically evaluated under the same framework used for Title VII discrimination claims); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) ("[The TCHRA] is effectively identical to Title VII . . . [and] we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA." (citations omitted)).  In the absence of direct evidence—evidence "which, if believed, proves the fact [of discriminatory intent] without inference or presumption," *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)—discrimination claims can be proven via circumstantial evidence under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Under the three-part, burden-shifting *McDonnell Douglas* framework, "a plaintiff must first set forth a prima facie case of discrimination." *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015)).  A plaintiff need not establish a prima facie case of discrimination "in order to survive a Rule 12(b)(6) motion to dismiss," *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)), but a plaintiff must "plead sufficient facts on all of the *ultimate elements* of [her] claim to make [her] case plausible," *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added).  And when a plaintiff's discrimination claims depend on circumstantial evidence, as Dube's do, "the plaintiff will ultimately have to show that

[she] can satisfy the *McDonnell Douglas* framework." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (cleaned up). In such cases, "it can be helpful to reference that framework" when determining "whether a plaintiff has plausibly alleged the ultimate elements" of her claim. *Id.* (cleaned up).

So, at this stage, the relevant inquiry is whether Dube has pleaded enough facts, accepted as true, to plausibly allege an actionable claim of employment discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13 (2002).

**1. Dube has failed to state a claim for national origin discrimination.**

To establish a prima facie case of national origin discrimination under Title VII and the TCHRA, Dube must show that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris*, 827 F.3d at 400 (citations omitted); *see also AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (requiring substantially similar elements under the TCHRA). But to survive a motion to dismiss, Dube needs only to plead "the ultimate elements" of her claim. *Cicalese*, 924 F.3d at 767 (quoting *Chhim*, 836 F.3d at 470). For a disparate treatment theory of national origin discrimination, the two ultimate elements are (1) an adverse employment action (2) taken against Dube because of her national origin. *See id.*

Dube alleges that she experienced national origin discrimination when her manager Leak told her that patients were unwilling to participate in her clinical

studies because "people in Texas do not want to talk to Africans on the phone." (Compl. at ¶ 7).  Dube further alleges that, after reporting Leak's discriminatory comments to higher ups, she was threatened with reduced pay or termination if her patient recruitment did not improve, Leak placed her on a PAP and assigned her additional projects so that she would have a "significantly larger workload than [her] non-Zimbabwean counterparts," and she was denied a request for time off due to the PAP.  (*Id.* at ¶¶ 6–11, ECF 10–11.)  This is not enough to plausibly allege that an adverse employment action was taken.

To plead an adverse employment action, "a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the terms, conditions, or privileges" of her employment.  *Hamilton v. Dallas County*, 79 F.4th 494, 502–03 (5th Cir. 2023) (en banc) (cleaned up).  Dube has not alleged termination or reduction in pay, leaving only the broad catchall category of discrimination in "the terms, conditions, or privileges of employment."  This language "is not limited to economic or tangible discrimination, and it covers more than terms and conditions in the narrow contractual sense."  *Id.* at 503 (cleaned up). Determining what falls within this category is a fact-specific inquiry, but hallmarks of these types of adverse employment actions include changes to "job title, grade, hours, salary, or benefits," as well as "diminution[s] in prestige or change[s] in standing among . . . co-workers."  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009).

Threats of termination or reduced pay do not constitute adverse employment actions, because they do not in actuality impact an employee's salary or title or "objectively worsen the employee's working conditions." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 232 (5th Cir. 2023) (citing *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 709 (5th Cir. 2016)).  Nor does Dube's placement on a PAP rise to the level of an adverse employment action, because she fails to allege how this PAP "affected her title, hours, salary, benefits . . . reputation . . . or her working conditions" in any way beyond "open[ing] up the possibility of further action"—further action which never transpired—and resulting in the denial of a single request for time off. *Id.*  And the fact that Dube's manager increased her workload by assigning her more studies to coordinate, absent corresponding changes in position, pay, duties, or hours, also does not qualify as an adverse employment action. *See Stewart*, 586 F.3d at 331 (holding reassignment to a new supervisor with a heavier workload was not a materially adverse employment action).  The conduct alleged is closer in kind to the standard measures employers take to discipline unsatisfactory workers, or to the "normal[ ] petty slights" and "minor annoyances" of the workplace, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), than it is to the adverse actions which materially alter the "terms, conditions, or privileges of employment."

Even if Dube had plausibly alleged that she suffered an adverse employment action, she has not pleaded sufficient facts to support a finding that any such action was taken against her "*because* of her protected status." *Cicalese*, 924 F.3d at 767 (citations omitted).  Dube's pleadings do not create the "reasonable inference" that

- 12 -

UT Southwestern acted against her because of national origin. *Olivarez*, 997 F.3d at 600. Setting aside the question of whether comments regarding "Africans," rather than Zimbabweans, fall under national origin discrimination, *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) ("The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."), the only fact in the pleadings regarding national origin discrimination that directly involves Dube is her allegation that Leak told her that "people in Texas do not want to talk to Africans on the phone," (Compl. at ¶ 7). In *Cicalese*, the Fifth Circuit explained that it was "a close call" whether allegations of repeated, derogatory remarks about Italians, made over the course of two years, were sufficient to raise the inference that adverse employment actions were motivated by anti-Italian bias. 924 F.3d at 768. Here, the allegation of a single comment—one that is offensive and sweeps broadly, but nonetheless regards "oral communication skills" where "such skills are reasonably related to job performance," *Fragante v. City and County of Honolulu*, 888 F.2d 591, 597 (9th Cir. 1989)—is likely not enough to "nudge" Dube's claim "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 547.

Additionally, Dube has not alleged any facts regarding a comparator suggesting UT Southwestern treated any similarly situated employees outside Dube's protected class differently. As discussed above, courts can reference the *McDonnell Douglas* framework for showing a prima facie case of discrimination to help determine whether a plaintiff pleaded the ultimate elements of her claim. *See*

- 13 -

*Cicalese*, 924 F.3d at 767.  Here, Dube would eventually be required to prove that UT Southwestern treated her "less favorably than others outside of [her] protected class." *See Olivarez*, 997 F.3d at 600 (quoting *Alkhawaldeh v. Dow. Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017)).  Beyond the non-specific and conclusory assertion in her complaint to the EEOC that she was given "a significantly larger workload than [her] non-Zimbabwean counterparts," (Compl. at ECF 10), Dube has failed to identify anyone outside of her protected class who is similarly situated to her at UT Southwestern.  Dube has not pleaded any facts suggesting that other non-Zimbabwean employees in her department had been warned to improve their recruitment numbers, let alone that any such individuals were not placed on a PAP, given increased workloads, or threatened with termination or reduced pay.

While a plaintiff need not prove her prima facie case for disparate treatment at the motion to dismiss stage, she does need to plead facts that make it plausible she suffered the adverse employment action because of her national origin.  *Cicalese*, 924 F.3d at 766–67.  The facts offered by Dube fail to accomplish this.  For these reasons, the undersigned finds that Dube has failed to state a claim under a disparate treatment theory.

Dube also claims that the national origin discrimination she faced "created a hostile work environment."  (Compl. at ¶ 10.)  "Hostile work environment is a specific discrimination claim under Title VII."  *Hudson*, 58 F.4th at 229.  "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

- 14 -

conditions of the victim's employment and create an abusive work environment."
*Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (cleaned up).  To show
a prima facie case of a hostile work environment claim, Dube must show that she
(1) "belongs to a protected group;" (2) "was subjected to unwelcome harassment;"
(3) the harassment was based on her protected status; (4) the harassment impacted a
"term, condition, or privilege of employment;" and (5) "the employer knew or
should have known of the harassment in question and failed to take prompt remedial
action."  *Id.* at 399–400 (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.
2002)).  The "ultimate element" of a hostile work environment claim that Dube must
plead to survive a motion to dismiss is that her employer, UT Southwestern, "created
a working environment heavily charged with discrimination."  *Pfang v. Lamar Inst. of
Tech.*, 685 F. Supp. 3d 425, 444 (E.D. Tex. 2023) (cleaned up); *see Raj*, 714 F.3d at
330–31.

Courts in this circuit apply "an objective 'reasonable person' standard to
evaluate severity and pervasiveness."  *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731
F.3d 444, 453 (5th Cir. 2013) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S.
75, 82 (1998)).  This inquiry requires courts to consider "all the circumstances,
including the frequency of the discriminatory conduct; its severity; whether it is
physically threatening or humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance."  *Johnson*, 7 F.4th at
400 (cleaned up).  "[N]o single factor is required."  *Id.*

As discussed above, not one of Dube's allegations, nor all of them in combination, equals the severity or pervasiveness required to affect a term, condition, or privilege of employment.  At worst, Leak's alleged comment to Dube was merely an offensive utterance, and the fact that it is the only comment of the kind that Dube experienced in her allegations marks it as precisely the type of "isolated incident" that does "not amount to [a] discriminatory change[ ] in the 'terms and conditions of employment.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Dube has failed to plead any facts suggesting that threats of termination or reduced pay, her placement on a PAP, or even her "significantly" increased workload, unreasonably interfered with her work performance.  Dube has not pleaded sufficient facts to plausibly allege that UT Southwestern created a working environment heavily charged with discrimination, let alone discrimination connected to her national origin.  For these reasons, the undersigned finds that Dube has failed to state a claim for hostile work environment. Dube's national origin discrimination claim should be dismissed.

### 2. Dube has failed to state a claim for retaliation.

To establish a prima facie case of retaliation, a plaintiff must show that she (1) engaged in an activity protected by either Title VII or the TCHRA; (2) the employer took an adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action. *See, e.g.*, *Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008).  An adverse employment action in a retaliation claim must be materially adverse,

meaning it must produce a harm or injury significant enough to "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68.  Dube engaged in protected activity when she reported her concerns over Leak's alleged comments to her program manager and to HR. *Rodriguez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) ("An employee that files an internal complaint of discrimination engages in a protected activity." (citations omitted)).  To survive a motion to dismiss, Dube needs only to "plausibly allege facts going to the ultimate elements" of her retaliation claim. *Cicalese*, 924 F.3d at 762.  Here, that would mean pleading facts that permit a reasonable inference that UT Southwestern took a materially adverse employment action against her because of her complaint to Obideen on April 1, 2024, or her complaint to HR on April 2, 2024.  *See Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).  Dube has not done this.

As discussed above, Dube has failed to plead sufficient facts to plausibly allege that she suffered a materially adverse employment action.  Additionally, Dube has failed to plead facts that suggest a causal link between the alleged adverse conduct and her complaints.  Dube does not allege that Leak had any knowledge of the complaints she made, and the "mere temporal proximity" between the complaints and Leak's actions to increase Dube's workload and place her on a PAP "alone is insufficient to prove but for causation."  *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  Obideen "threatened" Dube that she might be terminated or receive a reduction in pay directly after hearing her complaint

regarding Leak, but beyond the temporal proximity, Dube pleads no facts suggesting this threat was because of her complaint, rather than Obideen's stated concern over her recruitment numbers.  (Compl. at ECF 10.)  Dube's retaliation claim should be dismissed.

### 3. Dube has failed to state a claim for constructive discharge.

A resignation is actionable under Title VII and the TCHRA only if the resignation qualifies as a constructive discharge.  To prove constructive discharge, a "plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997).  "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citations omitted).  In determining whether a reasonable employee would feel compelled to resign, courts consider a wide range of factors and events.  *See Brown v. Bunge Corp.,* 207 F.3d 776, 782 (5th Cir. 2000).  But at a minimum, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile [work] environment claim." *Brown*, 237 at 566 (citing *Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir. 1998)).

The allegations Dube presents in support of her constructive discharge argument do not differ from the allegations made in support of her claims for national origin discrimination and retaliation.  Dube felt that the discrimination and retaliation became so "severe" that she had "no choice but to resign from [her] position." (*Id.* at ¶¶ 10–11, ECF 11.)  But just as Dube's allegations were insufficient

- 18 -

to plausibly allege that she suffered any adverse employment actions, and just as her allegations were insufficient to plausibly allege a hostile work environment, so too were her allegations insufficient to plausibly allege that a reasonable employee in her position would feel "compelled to resign." *Faruki*, 123 F.3d at 319. Dube's constructive discharge claim should be dismissed.

## C.     Dube Should Be Granted Leave to Replead Her Claims

Although the undersigned concludes that Dube's claims as currently pleaded do not survive Rule 12(b)(6) scrutiny, she should be permitted to make another attempt to plead her best case. *See, e.g.*, *In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or . . . [plaintiffs] are unwilling or unable to amend in a manner that will avoid dismissal." (internal citations omitted)). And, generally, "a pro se litigant should be offered an opportunity to amend [her] complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

"[T]he grant of leave to amend the pleadings pursuant to [Federal Rule of Civil Procedure 15(a)] is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). Under Rule 15(a)(2), "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15(a)'s liberal amendment policy compels that leave to amend should be granted absent some justification for refusal, such as undue delay, bad faith, dilatory motive

- 19 -

on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party by virtue of allowance of the amendment." *Kirkland v. Racetrac Petroleum, Inc.*, No. 3:13-CV-1754-N, 2014 WL 982852, at *4 (N.D. Tex. Mar. 13, 2014) (citing *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir.2003)). Moreover, when, as here, the party seeking leave to amend is proceeding pro se, courts are more likely to allow the party to amend the complaint rather than face dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1–2 (N.D. Tex. Feb. 13, 2008).

Here, the relevant factors weigh in favor of granting Dube an opportunity to amend. Dube is proceeding pro se, she has not previously amended her complaint, and there is no evidence indicating bad faith or undue delay on Dube's behalf, nor would undue prejudice to UT Southwestern result by allowing Dube to file an amended complaint pleading her best case. Additionally, the factual allegations Dube raised for the first time in her response—that she was instructed by a Dr. Hajjar to "stop emailing about the mistreatment," that multiple black coworkers had left UT Southwestern after experiencing similar mistreatment, and that Leak had explicitly stated that "Africans are perceived as scammers," (Resp. at ¶¶ 1–2.)— suggest that Dube has the ability to potentially adduce additional factual allegations that could better support her claims. Although a pro se plaintiff's pleadings are held to less stringent standards than pleadings drafted by lawyers, *Estelle*, 429 U.S. at 106,

- 20 -

those "pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal." *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 747 (N.D. Tex. 2013) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992)).  Accordingly, Dube should be permitted to file an amended complaint.

To successfully move forward with her case, Dube's amended complaint must include well-pleaded facts to plausibly state a claim for relief under Title VII and the TCHRA.  Such facts must be specific, clear, and precise.  Furthermore, Dube is instructed that the Court will consider her amended complaint to be her best pleaded case.  *See Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("[J]udges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." (citing *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208–09 (5th Cir. 1992))).

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that UT Southwestern's Motion to Dismiss (Dkt. No. 8), be **GRANTED**, that Dube be given an opportunity to file an amended complaint within 21 days of the District Judge's acceptance of these findings, conclusions, and recommendation or another date established by the District Judge, and that Dube's claims be dismissed with prejudice if she fails to file an amended complaint within the time allowed.

**SO RECOMMENDED** on February 27, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).